May it please the Court, Counsel. Good morning, Your Honors. My name is Joanna Christensen, and I represent the appellant Ayiko Paulette in this matter. I want to make absolutely clear from the beginning that Mr. Paulette is not challenging the indictment. He's not challenging the number of conspiracies in the indictment. He argues, and we argue in our brief, that there is one conspiracy indicted in this case. And at the change of plea hearing, he admitted the elements of that conspiracy. He admitted that a conspiracy existed. He joined it and involved more than 5 kilograms of cocaine and more than 50 grams of methamphetamine. The issue that we're raising is that when it gets to sentencing, the district court, the probation officer, through the pre-sentence report, and then the district court includes four separate conspiracies in the relevant conduct analysis. And our issue is whether those conspiracies that were not admitted to at the change of plea hearing are relevant conduct to this offense. They weren't charged as part of the indictment. The government does argue that the and others includes all of these other conspiracies. I think that's a little too broad. And that the dates include all of the other acts. And Mr. Paulette did not admit these things, certainly, at the change of plea hearing. The government's factual basis doesn't mention them. Ms. Johanson, the government argues that the greater than 50 grams of meth must have come from some of those transactions. Do you have a response to that? That's not in the record. In the pre-sentence report, certainly there are methamphetamine that is attributed to that. Apart from the four transactions that you're putting at issue, is there other evidence of methamphetamine being involved in the conspiracy? Not in the record, no. So why is it unreasonable for the court then to treat at least the meth transactions as part of this conspiracy? Well, certainly meth was part of the conspiracy. Mr. Paulette admitted that. But it was part of the conspiracy he admitted. The meth is in the pre-sentence report as part of a separate conspiracy with different conspirators, different time frames, a substantial gap in the time in which they were committed. Nothing in his admissions or in the indictment or in his plea agreement indicate that he's admitting to anything else other than what's in there. What's the most specific factual basis for meth? That he admitted the 50 grams or more. Other than that... Just the admission? The admission. In the record. You know, I was not trial counsel, so I'm not privy to the discovery. And that might be part of the issue in this case. But when we talk about relevant conduct, we have to talk about the common scheme or plan and common victims and accomplices, what the guidelines require. Can I ask you... Sure. As I understand it, the other parties in these four transactions were all prosecuted in various federal cases, right? I know of two of them were Brim and Lewis, I believe. Marcus Lewis. If Mr. Paulette were charged now with those transactions, wouldn't he seem to have a pretty strong double jeopardy defense? Charged now after he's been convicted? Charged after pleading guilty to this conspiracy from 2007 to 2014. I think he certainly would have an argument. I don't know how strong it is, because there were no admissions or findings about those other co-conspirators. So the question is whether it's the same offense, and it's just not clear enough in the indictment that it's the same offense. I would think that this gives him a double jeopardy blanket for all drug dealing between 2007 and 2014. That would be a pretty powerful defense, wouldn't it? I think it certainly would be a defense I would raise. I'm not sure it would be successful, because it's simply not spelled out in the indictment or in his admissions. So I think that there would be a hole there in arguing double jeopardy, because the indictment just simply doesn't cover specifically all of those individuals. The indictment is admittedly very broad, but it also covers 2007 to 2014, but there's no evidence between 2007 and 2011. So are we looking all the way back? And so as a double jeopardy, is he allowed to say anything that I did that was related to a drug conspiracy between 2007 and 2014? If that's what the court ultimately holds, then of course if that happens, which I assume is very unlikely at this point, then he would have that. But I don't think that there's enough there to make an absolute determination on that. Because of the lack of specificity in either admissions or the indictments. I think we see broad indictments all the time. And then defendants reserve their right, as Mr. Paulette did, to argue about drug amounts and argue what's included in relevant conduct. And that's what happened in this case. And he argued that that was not included in the conspiracy as relevant conduct. Another issue in this case is the district court's findings are a little off about why this was included. The court found that it was a jointly undertaken activity, which is actually a different section of the guidelines than the common scheme or plan, which applies to the defendant's own conduct, whereas a jointly undertaken activity would apply to all his co-conspirators' conduct. And reeling that in. So we argue that the district court did not make adequate findings regarding these amounts in the sentencing proceeding. Was the argument raised in the district court about these being separate conspiracies? Yes, it was. In the factual section of our brief, the defense counsel raised the fact that these individuals, Brim, Lewis, Garcia, Barnett, were not involved with the conspiracy charge in this offense. Where do we see that? It was his, let me find it real quick, it's record 439 were his objections. He objected to the inclusion of any drug amounts alleged by Brim, Lewis, Barnett, and Garcia in the relevant conduct calculation because they were not involved in the conspiracy charge in this case. That's the language from the objection? Yeah, that's the language. I don't have quotes around it, so it's probably not a direct quote. I do know that it was not a fully developed argument. It certainly could have been. Well, that's one of the things that concerns me here because it looks, at least it looks to me from this record, as if defense counsel was trying to finesse a tightrope walk by making as bare bones an objection as possible so as not to put at risk acceptance of responsibility. I understand that, but I have a little trouble by then criticizing the district judge for not saying enough in detailed findings about this kind of bare bones, don't screw up the acceptance adjustment kind of objection. It is a tightrope to walk when you're trying to talk about acceptance of responsibility. And the objections are minimal and particularly as to the other enhancements. As to the drug amounts, it is a little bit more fleshed out. And part of the reason I argue that this is preserved and the judge should have made more findings is that the government actually responded in a very similar way to the way they respond to this case on appeal and defended the pre-sentence report calculations. So the government's response is certainly directed to what we're arguing now. And everybody relied on their written responses and based on that, the district court, I think, at least should have used the right guideline section to make the relevant conduct findings when she did so. If I could have done it differently, of course I would have. Obviously as an appellate attorney, I like preserved full records. But we have what we have and I think that in distinguishing them from the rest of the objections, this one was made more specifically than the rest of them. And the government addressed it and the court did make findings. So I believe that's enough for review. Okay, thank you, Mr. Christensen. Thank you. Mr. Boyce. May it please the court, counsel, good morning. I'm Don Boyce from Southern Illinois here today on behalf of the United States. The indictment in this case that's at issue involved a number of counts. The conspiracy count that we're talking about is indeed broadly construed. It listed dates going from 2007 all the way to 2014. It said that these events happened in St. Clair County, Illinois and elsewhere. It listed the defendant in this case, Aiko Paulette, as well as others. It said that other people known and unknown to the grand jury were involved. It said that the conspiracy involved three different types of drugs, cocaine, heroin, and methamphetamine. And then it broke out drug amounts that some of the different defendants were responsible for in their involvement in the conspiracy. The defendant's contention on appeal is essentially that he wants to carve out just from 2014 on and say, I'm good for that part of the conspiracy, but I'm not good for anything else. The clearest reason why that doesn't work is the point that Judge Hamilton has already referenced, and that's the admission regarding methamphetamine. The indictment specifically alleged that the defendant's involvement in the conspiracy was 50 grams or more of methamphetamine, and he agreed to that at his plea. He agreed that that was an element of the offense and that his involvement in the conspiracy did involve at least 50 grams of meth. The only meth in the case comes from some of these things that are now in dispute. Paul Barnett was someone who was being supplied by Aiko Paulette back in 2012. He's the basis, and it was more than one transaction, but he's the basis of some of the evidence of methamphetamine in the case, as well as the deal involving Marcus Lewis and Jose Garcia with the seizure of cocaine and methamphetamine that was ultimately bound for St. Clair County and for the defendant. That was in 2012 as well. So basically, if you were to accept the defendant's contention that I'm only good for 2014 on and only with the people who are specifically named, there just is no basis for his admission that the case involved over 50 grams of methamphetamine. So I think that that can hopefully settle it. The case law, I believe, is on the United States' side. Savage is the case that says once you've pled guilty, and there's no allegation in this case that the plea was unknowing or that it was coerced or that the defendant was not represented by counsel, once you've done that, you've waived your right to complain about what's in the indictment later. Do you agree that there would be a double jeopardy problem given the breadth of the indictment if you were to go back and charge these separately? I haven't thought about that specifically until you brought it up, Your Honor, but it certainly seems like there would be. You described this in your brief as an unbroken series of drug deals, which frankly seemed to me like a stretch given the evidence that we have, given years and months between some of these things. I understand you may suspect he's been running this operation in your territory for a long time, but in terms of the evidence that we have available. The evidence, the facts are all in the PSR, the facts that we're allowed to rely on for this proceeding, and that evidence does show, as you said, the defendant had been a founder of this group all the way back in the late 80s or 90s and that this had been going on for a long time. Looking specifically at what is in the PSR in terms of, and I think this would be properly under the guideline analysis of whether this is a continuing course of conduct. I think that if this is all part of the charge conspiracy, we don't necessarily have to go there, but under the guideline analysis of whether this is a continuing course of conduct, you have Alan Henry, who is one of the named co-conspirators. He's the one who started getting cocaine from Paulette back in 07. They started using the diaper method, for lack of a better term, where the cocaine is hidden on the person from an out-of-town source. The cocaine is brought back using that method to Paulette in southern Illinois, where he used his network to resell it to others, including Henry, from 07 to 10. Henry dropped out of the picture for a while. He went to prison for drug dealing. He came back and rejoined the conspiracy once he got out of prison in 13 or 14. So you have a good series from 07 to 10. The events involving Brim and Lynch were in 11. The events involving Barnett with cocaine and methamphetamine were in 11 and 12. The events involving Garcia and Lewis were in 12. By the time you get there, Henry is back out buying cocaine and heroin from the defendant, and it all ends with the train trip with the various relatives and friends coming back from Texas, loaded down with cocaine in the diapers. So we can't account for every day between 2007 and 2014, but I don't think it's unfair to say that this was an unbroken chain of drug dealing. There's good evidence in the record to support that characterization. So I would submit that there's no error in considering these drug amounts. I would also point to the end of this, the harmless error consideration, that as long as the court accepts that the case did involve methamphetamine, which the defendant admitted it did, the methamphetamine in this case would set the base offense level on the guidelines at 36. That's the same as the court found with everything. There were other enhancements that drove the base offense up, but even if you take just the methamphetamine that the defendant agreed, he agreed that methamphetamine was in the case, that's a 36 regardless of anything else. So the guidelines wouldn't change as long as the court accepts that the case did involve methamphetamine and accepts that the only basis for that is the transactions involving Barnett and Lewis and Garcia. As a fallback from that, this is a guideline issue on appeal, but this is a case that was not a guideline sentence and it was not a guideline-driven sentence. This wasn't a single count where you rack up relevant conduct and that runs it up the chart and then the court has to decide, well, is that really fair or should I be looking at less, something along those lines. This is a multi-count indictment as to just this defendant. All sorts of things were alleged, a lot more than just this conspiracy. The guidelines were life, but the case was postured in a way that there was a mandatory minimum of 20 and the government agreed to recommend 25. So the range that the parties had staked out was 20 to 25. The district court properly acknowledged that she understood the guidelines were life and that she was going to take that as advice, but this wasn't a case where she's saying, well, I'm thinking about life, but I'm going to go down these many levels or I'm going to go over these many categories, a more traditional guideline analysis. This was a case where she looked at the range that had been staked out, listened to the parties' 3553A arguments and said, for these reasons, something more than the minimum is necessary. So I understand that most of the time if you got the guidelines wrong, that would be an error. In this case, I think the record would support our claim that any error would be harmless. So unless there are any other questions, I would just ask this court to affirm. Okay, thank you, Mr. Boyce. So Ms. Christensen, one another minute? One of the difficulties in this case is that the methamphetamine did become the tail that wagged the dog. I mean, it skyrocketed the offense level in this case, and for the lack of connection between the methamphetamine and a conspiracy admitted to, which is a gap of a year, nine months to a year, that's an issue in continuing this to be a common scheme or plan. The Savage case is not on point because Savage argued that none of the people named in the indictment he pled guilty to were part of his conspiracy when he should be sentenced. That's not at all what Mr. Paulette is arguing. He's arguing that the people in the indictment are the people that are part of his conspiracy, and the pre-sentence report is also framed like that. It talks about the conspiracy being the list of people who were charged and the people who were on the train in the end, and it says most of the conspirators were apprehended in July of 2014. I think there's a very limited connection between the prior events, other than the simple fact that the indictment lists a range of years. So unless the court has further questions, I urge the court to reverse and remand for resentencing. Okay, thank you. Thank you. Ms. Richardson.